ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PICTURE ME PRESS, LLC, | ) |
| | ) CASE NO. 5:08CV32 |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE JOHN R. ADAMS |
| | ) |
| CPI IMAGES, LLC, et al., | ) ORDER |
| | ) |
| Defendants. | ) |
| | ) (Resolves Docs. 109) |

Pending before the Court is PMP's motion to strike CPI's affirmative defense related to enforcement of a bankruptcy order. CPI has responded in opposition. The motion is GRANTED.

Fed.R.Civ.P 8(c)(1) provides as follows:

In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:

accord and satisfaction; arbitration and award; assumption of risk; contributory negligence; discharge in bankruptcy; duress; estoppel; failure of consideration; fraud; illegality; injury by fellow servant; laches; license; payment; release; res judicata; statute of frauds; statute of limitations; and waiver.

*Id.* (bullet points removed). As a result of the above rule, "[f]ailure to plead an affirmative defense in the first responsive pleading to a complaint generally results in a waiver of that defense." *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004) (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988)). However, "failure to raise an affirmative defense by a responsive pleading does not always result in waiver." *Moore, Owen, Thomas & Co. v. Coffey*,

992 F.2d 1439, 1445 (6th Cir. 1993).  Rather, the Court must consider the purpose of the rule which "is to give the opposing party notice of the affirmative defense and a chance to rebut it." *Id.* (citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350 (1971)).

In its oral response to the motion, CPI indicated that it sought to raise the defense of res judicata at trial in this matter.  In support of its ability to raise this defense, CPI claims that it pled the defenses of waiver and estoppel.  To that extent, CPI relies upon the following two provisions of its answer:

> Plaintiff's claims are barred by the doctrine of acquiescence.
>
> Plaintiff's claims are barred by the doctrine of waiver.

Doc. 6 at 9.  In its initial oral response to the pending motion, CPI asserted that its estoppel and waiver arguments were broad enough to include the defense of res judicata.  The Court disagrees.

First, accepting CPI's argument would fly in the face of the plain language of Rule 8(c). The rule lays out nineteen individual affirmative defenses.  Waiver, estoppel, and res judicata are separately spelled out by the rule.  Accordingly, the plain language of the rule precludes any argument that estoppel and/or waiver are inclusive of res judicata.  To reach such a conclusion, the Court would necessarily be required to find that the language of the rule separately delineating res judicata is superfluous.  The Court declines to do so.

Furthermore, the spirit of the rule is not satisfied by CPI's general defenses.  As noted above, the purpose of Rule 8(c) is to place the plaintiff on notice of the defense and a chance to rebut it.  CPI's defenses make no mention of the bankruptcy order and proceedings that it now claims form the basis of its res judicata defense.  The Court, therefore, finds that the defense was not properly raised in a responsive pleading.

In a matter closely on point with the instant proceedings, the United States Bankruptcy Court for the Southern District of New York reached a similar conclusion.

> It was not until November 29, 2006, only days before trial, that Defendants first raised the affirmative defense of res judicata, judicial estoppel, and/or equitable estoppel in the Joint Proposed Pre-Trial Order submitted to the Court. … Defendants failed to raise these affirmative defenses in the answer or the amended answer, dated December 28, 2005, one year prior to the submission of the Joint Pretrial Order. Further, Defendants amended answer only contained a general defense for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and a general equitable defense stating that the "[p]rinciples of waiver, estoppel, laches and equity provide Defendants a defense to the cause of action alleged in the complaint." Additionally, although Defendants purported to reserve "the right to amend their answer to assert different and additional defenses," Defendants never sought leave from the court to amend the answer to raise these affirmative defenses. Therefore, unless Defendants can assert that the affirmative defenses now being alleged were not available at the pleading stage, Defendants failure to plead these defenses should result in a waiver.
>
> The affirmative defenses that Defendants now seek to assert were available at the pleading stage. Defendants' res judicata defense is based on the assertion that Plaintiff failed properly to preserve all claims against Defendants in its confirmed chapter 11 plan. Plaintiff's chapter 11 plan was confirmed on May 19, 2004, approximately one year and five months before this action was commenced. As such, Defendants cannot allege that the res judicata defense was unavailable at the commencement of this litigation. Accordingly, on the eve of trial and almost one year after Defendants submitted their amended answer, to allow Defendants now to raise these defenses, would unduly prejudice the Plaintiff.

*In re Cross Media Marketing Corp.*, 367 B.R. 435, 446 (Bankr.S.D.N.Y. 2007) (footnote and internal citations omitted). Given that CPI seeks to utilize a bankruptcy court order from the Southern District of New York, the Court finds the above reasoning to be particularly persuasive under the given facts.

Like the above defendant, CPI failed to raise the defense of res judicata in its answer. Further like the above defendant, CPI has never sought leave to amend its answer to add the defense of res judicata. In addition to those factual similarities, the Court also notes that the order relied upon by CPI was issued by the bankruptcy court on June 4, 2007, more than six months prior

to the commencement of this action. Given the fact that CPI negotiated the "free and clear" sale with PCA, there is simply no question that CPI should have been aware of its purported res judicata defense at the inception of this litigation. Accordingly, the Court finds that the defense of res judicata has been waived by CPI.

In its written response, CPI appears to have changed the scope of its argument. CPI now argues that any issues surrounding the effect of the bankruptcy order are contained within its waiver and acquiescence defenses. The Court finds no merit in this position.

CPI has made clear that its position is that the "free and clear" order extinguished any claim that PMP had for trademark violations. PMP was not a party to that sales agreement. Accordingly, CPI has relied upon the alleged fact that PMP was aware of the agreement and failed to act. In essence, CPI has argued that PMP could of (and should of) litigated this issue in the bankruptcy court. That argument is based upon the doctrine of res judicata, not waiver or acquiescence.

To the extent that CPI seeks to raise the defenses of waiver and acquiescence, it is free to do so. However, neither of those defenses permits an argument that the "free and clear" sale order extinguishes PMP's claims.

> Acquiescence, like laches, requires a "finding of conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert his trademark rights against the defendant." *Elvis Presley Enter., Inc., v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir.1991) (quoting *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1046 (4th Cir. 1984)). Although both laches and acquiescence require proof that the party seeking to enforce its trademark rights has unreasonably delayed pursuing litigation and, as a result, materially prejudiced the alleged infringer, acquiescence requires more. *See Elvis*, 936 F.2d at 894 (holding that with acquiescence, "more is necessary than the ordinary requirement of showing unreasonable delay and prejudice to the defendant"); *Tandy*, 769 F.2d at 366 n. 2 ("To deny injunctive relief in trademark litigation, ... some affirmative conduct in the nature of an estoppel, or conduct amounting to 'virtual abandonment,' is necessary.") (internal citations omitted);

> *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 462 (4th Cir. 1996) ("Although the doctrines of acquiescence and laches, in the context of trademark law, both connote consent by the owner to an infringing use of his mark, acquiescence implies active consent, while laches implies a merely passive consent."); *SCI Sys., Inc. v. Solidstate Controls, Inc.*, 748 F.Supp. 1257, 1262 (S.D.Ohio 1990) (same).

*Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 569 (6th Cir. 2000).  Accordingly, while CPI may argue that PMP's failure to intervene in the bankruptcy proceedings constituted acquiescence, such a defense does not properly present the argument that the bankruptcy order extinguished any of PMP's claims, only that PMP's conduct served as an implied assurance to CPI that it would not assert its trademark rights.   The Court, of course, takes no stance on the viability of such a defense at this time, but CPI properly pled such a defense and may present it at trial.

Likewise,

> [w]aiver is mainly, or essentially, a matter of intention. Thus, a prerequisite ingredient of the waiver of a right or privilege consists of an intention to relinquish it. Indeed, the essence of a waiver, as indicated by the definition, is the voluntary and intentional relinquishment of a known right, claim, or privilege. Whether an alleged waiver is express or implied, it must be intentional. Mere negligence, oversight, or thoughtlessness does not create a waiver.

*State Farm Mut. Auto. Ins. Co. v. Ingle*, 180 Ohio App.3d 201, 207-208 (Ohio 2008).   Again, this defense is premised upon PMP's failure to participate in the bankruptcy proceedings.  Like acquiescence, it does not invoke the language of the sale order, nor does it permit CPI to attempt to introduce a defense based upon the language of such an order.

The Court's construction of CPI's defenses is supported by the very documentation relied upon CPI.  In its initial response to interrogatories, CPI asserted:  "Plaintiff's claim for damages is barred by laches, acquiescence and waiver due to Plaintiff's failure to enforce its marks against predecessors[.]"  Consistent with this Court's view, CPI never indicated that the sales order itself extinguished PMP's claims.  Rather, CPI relied upon a lack of prior litigation.  CPI is free to

raise the fact to the jury that PMP did not participate in the bankruptcy proceedings.  From that fact, CPI is free to argue that it has demonstrated acquiescence and waiver.  However, argument that the bankruptcy order actually precludes any suit by PMP will not be permitted.  To that end, CPI may not argue that the bankruptcy order itself establishes its defenses of acquiescence and/or waiver.  As detailed above, that argument was not raised in a timely manner.

To the extent that CPI has asked that the Court grant leave to amend the answer, the motion is DENIED.

> [T]here are exceptions to the general rule of waiver, including when amendment is permitted under Fed.R.Civ.P. 15(a).  Under Rule 15(a), leave to amend a pleading shall be freely given "when justice so requires." Factors that may affect that determination include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment.

*Seals v. GM Corp.*, 546 F.3d 766, 770 (6th Cir. 2008) (internal citations omitted).  A review of these factors militates against permitting leave to amend.

First, the Court does not believe that the delay was warranted in this matter.  CPI's defense is clear and straightforward:  the free and clear purchase agreement terminated any liability attached to the portrait studios mark.  That defense was readily available at the inception of this litigation. The Court is cognizant that the bankruptcy court believed that specific facts needed to be resolved prior to the success of the defense being determined.  However, regardless of whether or not the defense is ultimately successful, it is beyond belief that CPI was not aware of the existence of such a defense at the time the complaint was filed.  Despite that fact, no mention of this defense was made for more than a year after this litigation commenced.  The lengthy delay works against any motion for leave to amend.

As detailed above, there was a lack of notice to PMP.  CPI's general defenses never placed

PMP on notice of its purported res judicata defense or any defense, regardless of how it is labeled, that relied upon the language of the bankruptcy order.  Like the first factor, the lack of notice weighs against granting leave to amend.

At this time, the Court makes no finding regarding whether CPI engaged in bad faith in the manner in which it asserted this defense.  The Court, however, notes that CPI dragged PMP to the Southern District of New York in an attempt to resolve this issue.  In its abstention order, that court made several comments that are of interest to this Court.

> That issue should instead be decided in the underlying infringement action, which has been pending for over seventeen months[.]
> …
> In this instance, the balance tips decidedly in favor of abstention.
> …
> [R]esolution of CPI's motion to enforce the Sale Order is at most only tangentially related to the Debtors' bankruptcy estates.
> …
> CPI's pursuit of the motion in this Court, rather than in the Ohio District Court, many months after the commencement of the Ohio Action and after CPI's assertion of a counterclaim in the Ohio Action, raises more than a suggestion of forum shopping.

See Doc. 63-4.  While stopping short of claiming that CPI was acting in bad faith, the bankruptcy court's order certainly provides evidence that CPI did not pursue this defense in the most straightforward manner.  Accordingly, this factor also weighs against granting leave to amend.

Finally, the Court finds that substantial prejudice would result from granting leave to amend.  PMP has proceeded in this matter while no doubt incurring significant expense.  Now, CPI seeks to raise what is primarily a pure legal issue.  At a bare minimum, if CPI had raised this issue in a timely manner and been successful, PMP would have avoided the cost of expert discovery.  Instead, CPI failed to raise this defense until nearly all of discovery was complete and trial was looming.  Accordingly, the Court declines to grant leave to amend under the facts

presented.

The Court also notes that CPI has asserted that PMP should be judicially estopped from contesting the applicability of the bankruptcy order. Specifically, CPI alleges that PMP argued before the bankruptcy court that said court should abstain from resolving the issue because the issue would be litigated before this Court. CPI, therefore, concludes that PMP is estopped from attempting to exclude consideration of that issue now. The Court declines to adopt such a position. PMP was only forced to litigate in New York because of CPI's last-minute attempts to thwart this litigation through another forum. The statements made by the bankruptcy judge indicate his tacit acknowledgment that CPI engaged in impermissible forum shopping. Accordingly, the Court will not exercise its equitable discretion in favor of CPI on this issue.

PMP's motion to strike is GRANTED. CPI will not be permitted to argue that the bankruptcy order extinguished PMP's trademark claims.

IT IS SO ORDERED.

August 11, 2009_____ /s/ John R. Adams_____
Date   JUDGE JOHN R. ADAMS
   United States District Judge